# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | |
| WILLIAM M. BLOCKER, JR. | ) | Chapter 12 Case |
| | ) | Number <u>09-60002</u> |
| *Debtor* | ) | |
| | ) | |
| CALE BLOCKER | ) | Chapter 12 Case |
| | ) | Number <u>09-60003</u> |
| *Debtor* | ) | |
| | ) | |
| BLOCKER FARMING | ) | Chapter 12 Case |
| ENTERPRISES, L.L.C. | ) | Number <u>09-60004</u> |
| | ) | |
| *Debtor* | ) | |
| | ) | **Jointly Administered** |
| | ) | |
| LYNN S. WYATT and | ) | |
| WYATT PROCESSING, L.L.P. | ) | |
| | ) | |
| *Movants* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM M. BLOCKER, JR., | ) | |
| CALE BLOCKER, and | ) | |
| BLOCKER FARMING | ) | |
| ENTERPRISES, L.L.C. | ) | |
| | ) | |
| *Respondents* | ) | |

## MEMORANDUM AND ORDER
## ON MOTION FOR RELIEF FROM STAY

### FINDINGS OF FACT

Debtors Cale Blocker ("Cale"), William M. Blocker, Jr. ("Bill"), and

Blocker Farming Enterprises, LLC ("Blocker Farming") filed the present Chapter 12 case on January 5, 2009. Movants Lynn S. Wyatt ("Wyatt") and Wyatt Processing, LLP ("Wyatt Processing") seek relief from the automatic stay. The essence of the motion is that an order in Cale and Bill's previous bankruptcy required that they pay Wyatt and Wyatt Processing $2,462,799.81 in several installments. Upon default on said payments, Cale and Bill agreed to waive any protection under the automatic stay in any future bankruptcies. Motion, Dckt.No. 45 (April 6, 2009).

Prior to this filing, Cale had filed three previous bankruptcies: (1) Case No. 99-60968 was filed on November 1, 1999, in his name and in the name of Blocker Farms, and was terminated on April 17, 2000; (2) Case No. 00-60380 was filed on May 1, 2000, in his name and Blocker Farms, and was terminated on April 20, 2001; and (3) Case No. 06-60547 was filed individually on November 6, 2006, and terminated on November 4, 2008. Bill had filed one previous Chapter 12 case on November 6, 2006, which was terminated on May 20, 2008. *See* Exhibit 4. Blocker Farming is a new entity that is 5% owned by Cale and 95% owned by Bill.

Cale, Bill, and Blocker Farming's current bankruptcies are being jointly administered. However, they all filed separate petitions and the cases have not been substantively consolidated. Blocker Farming's petition states that it does not own any real property. *See* Case No. 09-60004, Dckt.No. 1, Schedule A. Cale's petition states he owns 176.46 acres (Kennedy Farm) in Evans County and 110.72 acres (Griner Farm) in Evans

County, and Bill's petition states he owns 504.96 acres in Tattnall County. *See* Case Nos. 09-60003 & 09-60002, Dckt.No. 1, Schedule A.

In Cale and Bill's 2006 bankruptcies, Wyatt filed a secured claim in the amount of $2,612,253.98, and Wyatt Processing filed an unsecured claim in the amount of $1,238,750.55. Claim Nos. 10 and 13 in Case No. 06-60547 & Claim Nos. 7 and 11 in Case No. 06-60546. On March 26, 2007, Cale and Bill each filed objections to both claims arguing that the amount due to Wyatt was "in excess of the amounts rightfully due said creditor" and that they were "not indebted to [Wyatt Processing] in any amount." *See* Objections, Case No. 06-60547, Dckt.Nos. 38 & 39; Case. No. 06-60546, Dckt.Nos. 39 & 41. On April 11, 2007, Wyatt and Wyatt Processing filed a response and requested a hearing on Debtors' objections. Response, Case No. 06-60547 & Case No. 06-60546, Dckt.No. 55.

After several continuances of the hearing on the objection, Cale filed a Motion to Sell Real and Personal Property, which was amended several times. *See* Motion, Case No. 06-60547, Dckt.No. 101 (October 9, 2007); Amended Motions, Dckt.No. 104 (October 19, 2007) & 106 (November 5, 2007). The final Amended Motion to Sell was filed on December 7, 2007. That Motion stated that the disputed amounts of Wyatt and Wyatt Processing had been resolved. Furthermore, Cale and Bill had received two binding offers to purchase portions of their farming enterprise. The first offer was for $400,000.00 and involved the sale of approximately 17 acres of Cale and Bill's property and adjoining packing shed and related equipment located therein. Cale and Bill also received another offer for the

purchase of approximately 216 acres of woodland and ponds for the price of $600,000.00. Cale and Bill sought approval from the Court to sell the property free and clear of the liens and to pay the proceeds from the sale to Wyatt and Wyatt Processing. <u>Third Amended Motion</u>, Dckt.No. 117.

On January 2, 2008, this Court signed an order granting the motion. <u>Order</u>, Dckt.No. 123. Several months later, Wyatt, Wyatt Processing, Cale, and Bill entered into a consent order, which I approved and filed of record. It reflected the previously approved sale and settled all other issues between the parties:

> 1. Cale Blocker shall be allowed to sell approximately 17 acres of the debtor's property together with a packing shed and related equipment located on said property as well as an additional tract of land consisting of approximately 216 acres of woodland and ponds. Said 216 acres being a portion of the 332.95 acre parcel of land on which Lynn S. Wyatt holds a first lien position. The sale of said property shall take place on or before the 31st day of December 2007. Lynn S. Wyatt is to receive the net proceeds in the amount of $1,000,000.00 from said sale.
>
> . . . .
>
> 4. Cale Blocker shall pay to Lynn S. Wyatt the sum of $800,000 together with interest at a rate of 8% on the 31st day of December, 2008. Cale Blocker agrees to give notice to Lynn S. Wyatt by November 1, 2008 if said payment cannot be made to allow Wyatt to foreclose on the remaining 332.95 acres of property owned by Cale Blocker. At such time Wyatt will be allowed to begin foreclosure proceedings in anticipation of said default.
>
> 5. The remaining balance of approximately $1,000,000.00

> shall be paid on or before the 31st day of December, 2009
> . . . .
>
> 6. William M. Blocker, Jr. shall dismiss his pending bankruptcy and give to Lynn S. Wyatt a deed in lieu of foreclosure to be held in trust until a default shall occur under the terms of this Order, if the indebtedness is satisfied, said deed shall be returned.
>
> 7. Lynn S. Wyatt and Wyatt Processing, LLP (the "Wyatts") shall retain their existing liens on property of Cale Blocker and William Blocker until all monies are paid . . .
>
> 8. Whenever a default shall occur under the terms of this Order, Lynn S. Wyatt and Wyatt Processing, LLC shall be allowed immediately, without any further order of the Court, to enforce their security interest in the property set forth in the deeds to secure debt and immediately take all steps necessary and allowable under state law.
>
> 9. Except as noted above all other claims of the Wyatts or Oscar Wyatt are deemed withdrawn and disallowed. The provision of this Order shall apply in the instant bankruptcy proceedings as well as any future case(s) filed by either of the debtors such that the debtors waive any protection under the automatic stay in the event of a default in the payments outlined above.
>
> Order, Dckt.No. 158 (March 7, 2008 *nunc pro tunc* December 7, 2007).

Cale paid the $1,000,000 by December 31, 2007. On March 18, 2008, Bill voluntarily dismissed his case. Motion to Dismiss, Dckt.No. 127. After filing a Chapter 12 plan but prior to confirmation, Cale voluntarily dismissed his case on September 17, 2008. Motion to Dismiss, Dckt.No. 203.

In December 2008, Movants began foreclosure proceedings under Georgia state law. Notices of the foreclosure ran in the Claxton Enterprise and Glennville Sentinel on December 11, 18, 25, and January 1. Wyatt did not receive the $800,000 payment that was due on December 31, 2008. Prior to the foreclosure date, Debtors filed for Chapter 12.

## CONCLUSIONS OF LAW

Debtors assert that the pre-petition waiver of the automatic stay in the Consent Order is not enforceable.[1] I disagree. The Consent Order entered in the previous bankruptcy provided relief for Wyatt and Wyatt Processing as protection if Cale or Bill failed to perform their duties as laid out in the Consent Order. It is undisputed that Cale and Bill consented to the Consent Order, were represented by counsel, and were aware of the prospective relief granted to Wyatt and Wyatt Processing. The consent order was signed by me, was not appealed, and became final. "Accordingly, [Wyatt and Wyatt Processing are] collaterally estopped from attacking the validity and enforceability of the Consent Order."[2] Daniels v. J.P. Morgan Chase Bank, 2006 WL 897211, at *2 (E.D.Va. Apr. 5, 2006); see

---

[1] Debtors argue that this Court should use the four part test found in In re Desai, 282 B.R. 527 (Bankr.M.D.Ga. 2002)(Laney, J.) to determine whether the pre-petition waiver of the stay is valid. While the test enumerated by my good colleague is well reasoned, I decline to apply it here, for I resolve this issue in light of the principles of collateral estoppel, while his analysis ultimately turned on issues of equity in property and feasibility, classic stay relief factors.

[2] Debtors argue that Wyatt and Wyatt Processing were the ones who breached the Consent Order. Debtors assert that Cale and Bill did not provide notice in November 2008 to Wyatt and Wyatt Processing that Debtors would be unable to make their December 31, 2008 payment. Debtors state Wyatt and Wyatt Processing, even without this notice, initiated foreclosure proceedings in November 2008, an act which prevented Debtors from selling parts of the property and making the December 2008 payment. This argument, even if meritorious, can be raised in state court. That court has concurrent jurisdiction to entertain challenges to non-judicial foreclosures. By obtaining the consent order from this Court, Debtors waived their right to a federal forum when they agreed, in effect, that any foreclosure would not be stayed. In the absence of a stay, the state court forum is the only one available.

Celotex Corp. v. Edwards, 514 U.S. 300, 313, 115 S.Ct. 1493, 1501, 131 L.Ed.2d 403 (1995)(held that when a bankruptcy court with proper jurisdiction issues an injunction, the parties are expected to obey that order until it is modified or reversed by the bankruptcy court and can not collaterally attack that order in the district court); In re Edwards, 222 B.R. 527, 528 (Bankr.E.D.Va. 1998)(held that debtor was estopped from collaterally attacking a consent order that provided prospective relief from stay because debtor consented to said order, did not appeal and the consent order was valid); Abdul-Hasan v. Firemen's Fund Mortgage (In re Abdul-Hasan), 104 B.R. 263, 267-68 (Bankr.C.D.Cal. 1989)(held that debtor was collaterally estopped from objecting to relief from stay in the current case because debtor failed to appeal the stay relief order granting prospective relief in the previous case).

Even if collateral estoppel does not prevent Debtors from challenging the enforceability of the Consent Order, the bankruptcy court still had the ability to provide prospective relief in the prior case under 11 U.S.C. § 105. This Court is allowed under 11 U.S.C. § 349(a) and § 105(a) to restrict a debtor's ability to file subsequent petitions. "In contrast to a dismissal with prejudice to the future filing of a bankruptcy petition, an order granting a particular secured creditor prospective relief from the automatic stay does not deny the debtor future access to the bankruptcy court." In re Hamer, 2000 WL 1230496, at *6-7 (E.D.Pa. Aug. 18, 2000)(citing In re Felberman, 196 B.R. 678, 683 (Bankr.S.D.N.Y. 1995); In re Abdul-Hasan, 104 B.R. at 267). "If prohibiting future filings may be deemed 'necessary or appropriate to carry out the provisions of [the Bankruptcy Code under § 105(a)],' so must the more moderate remedy of granting prospective relief from the automatic stay." Id. at *7.

I find that prospective relief was appropriate. The Wyatt and Wyatt Processing claims were reduced from $3.4 million to $2.8 million, and a repayment schedule was agreed to. That resolution coupled with the provision for prospective stay relief served the salutary purpose of reaching finality in litigation, judicial economy, and compromise. It was approved by this Court. Failing to enforce it would make a charade of the entire process and lead parties to be disinclined to settle cases. That path I refuse to follow.

ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion for Relief from Stay is hereby GRANTED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 5th day of June, 2009.